UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEITH JACKSON,

                              Plaintiff,

  v.                                                 Case No. 17-cv-194-pp

DR. PATRICK MURPHY, GARY HAMBLIN,
EDWARD WALL, JUDY SMITH,
SARA KROPP, DANIELLE FOSTER,
MORGAN BAILEY, WILLIAM MCCREEDY,
WILLIAM GOLDEN, JAMIE BARKER,
DAVID BURNETT, LON BECHER,
HOLLY GUNDERSON, RN CARMODY,
THERESA MURPHY AND CARRIE SPRANGER,

                              Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 3), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 23), AND DENYING PLAINTIFF'S MOTION FOR INJUNCTION (DKT. NO. 27)**

---

The plaintiff, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. §1983, dkt. no. 1, along with a motion for leave to proceed without prepayment of the filing fee, dkt. no. 3. This order resolves his motion and screens his complaint. This order also resolves the plaintiff's motion to appoint counsel, dkt. no. 23, and his motion for injunction, dkt. no. 27.

**I.      Motion for Leave to Proceed without Prepayment of the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case, because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b).

On February 16, 2017, the court ordered the plaintiff to pay an initial partial filing fee of $71.76. Dkt. No. 6. The plaintiff paid that fee on March 2, 2017. He has made additional payments totaling $122.00. The court will grant the plaintiff's motion, and will require the plaintiff to pay the remainder of the filing fee ($156.24) over time as described at the end of this decision.

**II.     Screening the Plaintiff's Complaint**

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    A.    The Plaintiff's Allegations

The plaintiff is incarcerated at the Oshkosh Correctional Institution (Oshkosh). Dkt. No. 1 at 1. He suffers from "soft tissue disease or predisposal towards recurrent cystic formation or multiple disease." Id. at 11. This condition has allegedly caused tumors and cysts to grow in the plaintiff's left testicle, and it also causes severe stomach pain. Id. at 12-13. He also has severe pain in his nose. Id. at 13. The plaintiff has filed a 97-page complaint in which he describes these medical conditions, treatment he has sought from the defendants, and treatment he has received both at Oshkosh and at outside hospitals. Id. at 9-91. The complaint allegations begin on February 27, 2012, and end in August 2016. Id. at 12, 88, 90.

The plaintiff alleges that while Oshkosh medical staff saw him on a fairly regular basis for his medical issues and sent him offsite to specialists, they did not treat his severe pain, whether it was running out of his medications or the required "athletic supporter" for his testicle, or declining to treat the pain. See id., *e.g.,* at 13, 20, 21, 28, 29, 31, 32, 35, 58, 59, 60, 69, 75 and 85. The plaintiff also alleges that the medical staff didn't follow specialists' treatment recommendations. See id., *e.g.,* at 28, 43, 45, 46. The plaintiff's symptoms got progressively worse over time, and he allegedly notified the defendants of his untreated symptoms and severe pain multiple times. See id., *e.g.,* at 14, 15, 16, 17, 30, 31, 36, 38, 39, 42, 45, 51, 53, 54, 55, 60, 61, 64, 65, 66, 67, 76, 77, 78, 84, 86, 87, 88, 89, 90.

The plaintiff alleges that he finally had his nose surgery on May 6, 2015, id. at 76, finally had testicle surgery on November 6, 2015, id. at 85, and finally had surgery to remove the cysts and lumps in his throat on August 3, 2016, id. at 88, 90. The delay and failure to treat the plaintiff's symptoms from February 27, 2012, until August 3, 2016 allegedly caused the plaintiff significant unnecessary pain and suffering.

The plaintiff claims that the defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. He lists specific allegations against each of the defendants for actions they did, or did not, take to help him. For relief, he seeks monetary damages.

B.  Discussion

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (quoting Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009). To state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition. Id. (citing Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011)). The court finds that the plaintiff may proceed on an Eighth Amendment deliberate indifference to a serious medical need claim.

**III.  Motion to Appoint Counsel**

The plaintiff has filed a motion to appoint counsel. Dkt. No. 23. He states that he cannot afford an attorney and that his status as a prisoner will greatly limit his ability to litigate the case. Id. The plaintiff also states that this case presents complex issues which will require significant research, and that he has limited access to the law library as well as limited legal knowledge. Id. He states that he has made repeated efforts to find an attorney on his own. Id.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d

5

647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

In this case, the court finds that the plaintiff has made a reasonable attempt to find an attorney on his own thereby satisfying the first requirement for recruitment of counsel. The plaintiff's filings show, however, that he is intelligent, has a very good factual and legal understanding of his claim, and a good knowledge of the law. The court finds that he can litigate on his own at this stage of the case. That is, he can engage in pretrial discovery and motion practice. The court will therefore deny without prejudice the plaintiff's motion to appoint counsel. If, in the future, the proceedings become too complicated for the plaintiff to explain on his own, he may renew his request that the court appoint him counsel.

**IV.    Motion for Injunction**

The plaintiff has filed a motion for an injunction "that Dr. Patrick Murphy no longer be allowed to see [the plaintiff] as a medical patient as well as no longer treat [the plaintiff] for any medical needs." Dkt. No. 27. The plaintiff states that Dr. Murphy is a poor medical provider and that he has

shown that he does not care when the plaintiff complains of pain. Id. He also states that Dr. Murphy disagrees with him and accuses him of lying or exaggerating his complaints of pain. Id. The plaintiff filed a declaration, dkt. no. 29, and a brief, dkt. no. 30, along with his motion.

In his declaration, the plaintiff describes a September 15, 2017, appointment with Dr. Murphy. Id. At this appointment, the plaintiff allegedly described to Dr. Murphy how he was leaking urine down his leg into his right sock and shoe, and how he had sores on his penis from wearing the "capture." Id. at 1. Dr. Murphy disagreed that the plaintiff's sock and shoe were wet from urine, and stated that they were maybe damp from sweat. Id. The plaintiff also told Dr. Murphy that his right testicle was growing a surrounding mass like the left one had years earlier. Id. Dr. Murphy did not agree but he finally said that the plaintiff could ask the UW doctor about his testicle. Id. at 1-2.

In his brief, the plaintiff describes seeing a specialist at the UW Hospital on July 14, 2017, who prescribed Vesicare medicine for a weak bladder, a follow-up visit, and continued physical therapy. Dkt. No. 30. The plaintiff alleges that Dr. Murphy prescribed Trospium instead of Vesicare. Id. The plaintiff allegedly returned to UW Hospital on September 22, 2017, and the urologist sent a note to Dr. Murphy and Oshkosh staff to discontinue the Vesicare and instead use Mirabegron. Id. The plaintiff alleges that he received a memo from the "HSU" (Health Services Unit) prescribing Vesicare. Id. Based on this, the plaintiff believes that Dr. Murphy is experimenting with medicine and

7

medical treatment, delaying treatment that may help him, and failing to follow doctor-prescribed orders. Id.

The court construes the plaintiff's motion as a motion for preliminary injunction.

A party seeking a preliminary injunction must demonstrate that he is reasonably likely to succeed on the merits, that he will suffer irreparable harm if the court does not issue the injunction, and that he lacks an adequate remedy at law. Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006). "If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis . . . which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." Id.; see Joelner v. Vill. of Wash. Park, 378 F.3d 613, 619 (7th Cir. 2004).

As to the plaintiff's likelihood of success on the merits of his claims: The plaintiff disagrees with Dr. Murphy's treatment decisions. Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007) (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976)). At the same time, the fact that a plaintiff received some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to

seriously aggravate" a medical condition. Id. (citing Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)).

As to irreparable harm, the plaintiff himself admits that he has received medical care. He simply does not agree with the care he is receiving. This does not demonstrate irreparable harm.

The plaintiff has not shown a reasonable likelihood of success on the merits of his claim that Dr. Murphy's treatment constituted deliberate indifference, and he has not shown that he is suffering irreparable harm.

### V.     Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 3

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 23

The court **DENIES** the plaintiff's motion for injunction. Dkt. No. 27

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

The court also **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court further **ORDERS** that the agency having custody of the prisoner shall collect from his institution trust account the $156.24 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The agency shall clearly identify the payments by the case name and number assigned. If the plaintiff transfers to another institution—county, state or federal—the transferring institution shall forward a copy of this order along with plaintiff's remaining balance to the receiving institution.

The court will send a copy of this order to Oshkosh Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. Because each filing will be electronically scanned and entered on the docket on receipt by the clerk, the

plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should retain a personal copy of each document filed with the court.

The court advises the plaintiff that if he doesn't file documents or take other court-ordered actions by the deadlines the court sets, the court may dismiss his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 12th day of March, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**