UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEITH JACKSON,

                Plaintiff,

v.                                           Case No. 17-cv-194-pp

DR. PATRICK MURPHY, GARY HAMBLIN,
EDWARD WALL, JUDY SMITH,
SARA SCHNEIDER, DANIELLE FOSTER,
MORGAN BAILEY, WILLIAM MCCREEDY,
WILLIAM GOLDEN, JAMIE BARKER,
DAVID BURNETT, LON BECHER,
HOLLY GUNDERSON, ASHLEE WALDVOGEL,
THERESA MURPHY, and CARRIE SPRANGER,

                Defendants.

---

**ORDER DIRECTING DEFENDANTS TO FILE A MORE DETAILED RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 64), GRANTING PLAINTIFF'S MOTION TO CORRECT NAMED DEFENDANTS (DKT. NO. 67), DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 73), DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 79), DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER (DKT. NO. 81), DENYING AS MOOT PLAINTIFF'S MOTION TO POSTPONE DEPOSITION (DKT. NO 90), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 90), DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 104) AND AMENDING THE SCHEDULING ORDER**

---

Plaintiff Keith Jackson is a Wisconsin state prisoner at Oshkosh Correctional Institution, and is representing himself. He is proceeding on an Eighth Amendment deliberate indifference to a serious medical need claim, based on allegations that the defendants delayed and failed to treat his soft tissue disease symptoms over the course of about four-and-a-half years,

1

resulting in unnecessary pain and suffering. See Dkt. No. 40 at 3-5. The court will address several motions that the parties have filed.

**I.    Plaintiff's Motions for Injunctive Relief, dkt. nos. 64, 73**

    A.    Motion for Preliminary Injunction

The plaintiff has filed a motion for preliminary injunction. Dkt. No. 64. He seeks an order "to stop Dr. Murphy from deciding, performing or having anything to do" with providing him medical care. Id. at 1. The plaintiff describes in detail the basis for his motion, which primarily was Dr. Murphy's alleged failure to diagnose and treat his symptoms, which he alleges resulted in emergency surgery at Mercy Hospital on June 10, 2018, to remove the plaintiff's gall bladder. Id. at 1-2.

Specifically, the plaintiff alleges that on June 6, 2018, he was rushed to the Mercy Hospital emergency room after vomiting blood and suffering severe stomach pain. Id. at 1. He allegedly received a CT scan and was found to have an enlarged gallstone blocking his cystic and bile ducts. Id. The plaintiff states that he was given pain medication, told that he would be returned to Oshkosh and hat prison staff would schedule surgery for him immediately. Id. The next day, the plaintiff had blood in his urine. Id. He took a bag of bloody urine to the "HSU" (Health Services Unit) and, once there, he provided another urine sample which the nurse took to Dr. Murphy, who allegedly stated that the plaintiff "was not peeing blood and that's not blood in [his] urine." Id. On June 8, the plaintiff visited Mercy Hospital and staff there told him that the surgery had been scheduled. Id. at 1-2. The plaintiff states that he then was returned

to prison and that he was in pain, but had pain medication. Id. at 2. The next evening, the plaintiff allegedly starting vomiting, and some of the vomit was bloody. Id. Prison staff allegedly immediately transported the plaintiff to the emergency room at Mercy Hospital and on June 10, his gallbladder was removed. Id. He was hospitalized until June 15 and then returned to Oshkosh. Id. The plaintiff states that Dr. Murphy did not see him when he returned to Oshkosh, but that a nurse did see him. Id. The plaintiff also states that Dr. Murphy has shown incompetency for years in treating him, and he attaches several exhibits to his motion. Id.

The plaintiff's exhibits consist of twelve Health Service Requests that the plaintiff submitted between May 16, 2017 and June 7, 2018. Dkt. No. 65-3 at 1-12. The court describes these Health Service Requests below.

1) On May 6, 2017, the plaintiff stated that he "need diaper size large, still leaking still having stomach and testicle pain." Dkt. No. 65-3 at 1. The HSU Response indicates that the plaintiff was scheduled to be seen in the HSU. Id.

2) On May 9, 2017, the plaintiff stated, "although the diapers are crap and the pee still running down my leg and I ruin my shoe I still need more diapers also you still need to send the two athletic supporters to [me] for 2 reasons being it holds diaper in place and 2 it holds test[e] in place and still having stomach and testicle pain (sic)." Id. at 2. The May 11, 2017, response from Nurse Hansen states, "You will be scheduled to address your concerns with a nurse, so we can better meet your needs." Id.

3) On May 9, 2017, the plaintiff stated, "Dr. Murphy I want to and need to go back to UW Hosp and see Dr. Bell because since Dr. Bell performed that prostat[e] and bladder test I've been peeing on myself and not feeling the urine or pee when it comes out until it's running down my leg, my penis hurt too as do my right test[e] and the diapers and pads are junk these things are not

3

designed for men because the piss still runs down my leg. I want to see Dr. Bell." Id. at 3. The May 11, 2017, response from Nurse Hansen states, "Continue with the pelvic floor exercises prescribed. You are scheduled a follow-up appointment with UW." Id.

4) On May 13, 2017, the plaintiff stated, "I wrote you about my leaking urine and stomach hurt and needing diapers you said I would see a nurse that was 3 or 4 days ago and still haven't saw them. I need diapers." Id. at 4. The response indicates that the plaintiff is scheduled to be seen in HSU by "RN/LPN." Id.

5) On May 24, 2017, the plaintiff stated, "I am asking you to provide me "conducive" that works. A condom would fit better and secure the urine from running down my legs and ruining my shoes and clothes and I would also know when it's full and also possible now rinse and reuse, but now I need more useless diaper I still have stomach pain in bladder area and penis." Id. at 5. The May 25, 2017 response indicate that the plaintiff was scheduled to be seen in the HSU by "MD/DO" and that he was "treated today." Id.

6) On February 21, 2018, the plaintiff stated, "I just pee and that been a few min I now feel leaking what I don't get is why the pee isn't stop by soaking in underwear even if I wrap up with towel it will go down leg, my stomach also still hurt as well nothing right." Id. at 6. The February 22 response from Nurse Hansen indicates that the plaintiff was seen that day for a nursing sick call. Id.

7) On March 21, 2018, the plaintiff stated, "Dr. Murphy I'm still having urine leakage very bad soaking my socks and some right testicle pain now and a mass can be felt as an attachment to right testicle, I still having stomach pain." Id. at 7. Nurse Hansen responded that day and the response indicates that the plaintiff had a nursing sick call that day and that he was scheduled to be seen in HSU by "RN/LPN." Id.

8) The plaintiff stated (date illegible), "Dr. Murphy I'm still having heavy urine leakage and it's still run down my leg. You still haven't saw me about urologist last visit. I still have right testicle pain and mass growing around testicle, I still have stomach pain." Id. at 8. On March 31, 2018, Nurse Hansen responded, "Medical concern forwarded to Dr. Murphy. Reported symptoms such as testicular pain, mass growth,

4

    stomach pain reported by you required HSU to respond & assess." Id.

9) The plaintiff stated (date illegible), "Dr. Murphy still having stomach pain in the area we talked about and testicle pain also still leaking urine badly right testicle pain." Id. at 9. Nurse Hansen's April 19, 2018 response indicates that the plaintiff was scheduled to be seen in HSU by "RN/LPN." Id.

10) On May 4, 2018, the plaintiff stated, "Dr. Murphy I'm still experiencing stomach pain, testicle pain and heavy bladder leakage; also that problem with restricted breathing." Id. at 10. Nurse Hansen's May 5, 2018 response indicates that the plaintiff had a nursing sick call "today." Id.

11) On May 18, 2018, the plaintiff stated, "Dr. Murphy I went to UW last Fri and Dr. Jarraud told me someone made a mistake about doing the procedure for Botox on bladder, I'm still having testicle pain stomach pain and heavy urine leaking." Id. at 11. On May 19, 2018, HSU staff commented, "UW-Urology wrote a recommendation to monitor for now and follow-up in about 6 months. They did not write recommendations for Botox at this time. Please resubmit if HSU evaluation is needed before then." Id.

12) On June 7, 2018, the plaintiff stated, "blood in urine." Id. at 12. A nurse signed the form, but it is not clear from the from if the plaintiff received treatment that day. Id.

Dkt. No. 65-3 at 1-12.

The defendants assert that the court should deny the plaintiff's motion because the motion "makes clear that he is being provided with medical care to treat his complaints." Dkt. No. 68 at 2; Dkt. No. 69. According to the defendants, the plaintiff's disagreement with the care he is being provided is not enough to prove deliberate indifference. Dkt. No. 68 at 3. They contend that because the plaintiff cannot show a likelihood of success on the merits of the underlying lawsuit or that he will suffer irreparable harm, the court should

5

deny his motion. Id. The defendants also state that they will provide the court with a more detailed response if the court needs additional briefing. Id.

In his reply, the plaintiff states that he has suffered actual and imminent injury based on Dr. Murphy's failure to diagnose the gallstone, as well as delay in treatment that could have eliminated pain and suffering. Dkt. No. 72 at 2.

  B. <u>Plaintiff's Motion for Temporary Restraining Order</u>

Almost a month after he filed the motion for a preliminary injunction, the plaintiff filed a motion for a temporary restraining order "stopping any medical treatment by Dr. Patrick Murphy[.]" Dkt. No. 73 at 1. The basis for this motion is similar to the basis for the motion for preliminary injunction—he asserts that Dr. Murphy has failed to diagnose his medical problems since he arrived at Oshkosh and failed to listen to other medical professionals about his medical conditions since 2010, and that most recently Murphy told the plaintiff that the pain he had was gas but it was actually a gallstone trapped between "cystic (cystic duct) and bile," which resulted in the plaintiff having to have his gallbladder removed. Id. In addition, the plaintiff states that he has been leaking urine since March 2017, and that he had right testicle pain, but that Dr. Murphy has not tried to resolve these issues. Id. at 2. The plaintiff states that he does not "ever want Dr. Murphy to medically see me, treat me or make any kind of decisions on my medical conditions or treatment." Id.

The defendants' response reiterates their arguments from their response to the plaintiff's motion for preliminary injunction, *i.e.*, that the plaintiff's

6

disagreement with his medical care does not establish deliberate indifference. See Dkt. No. 76.

C. <u>Analysis</u>

Federal Rule of Civil Procedure 65 governs the issuance of injunctions and restraining orders. The primary difference between a temporary restraining order ("TRO") and a preliminary injunction is that a court may issue a TRO "before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(C). In this case, the defendants have had an opportunity to be heard on the issue and, as described below, the court will order the defendants to file a more detailed response. The plaintiff's request for relief—asking the court to order that Dr. Murphy not be allowed to treat him—does not warrant immediate injunctive relief, that is, relief without hearing from the defendants. Thus, the court will deny the plaintiff's motion for TRO.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997). The purpose of such an injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." <u>Fahenm-El v. Klincar</u>, 841 F.2d 712, 717 (7th Cir. 1988). To obtain a preliminary injunction, the plaintiff has the burden of establishing that: (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction. <u>Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health</u>, 699 F.3d 962, 972 (7th Cir. 2012), citing

7

Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583, 589-90 (7th Cir. 2012).

In the context of prisoner litigation, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

As the court explained when it previously denied the plaintiff's motion for preliminary injunction to have Dr. Murphy stop treating him,

> [m]ere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007) (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976)). At the same time, the fact that a plaintiff received some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. Id. (citing Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)).

Dkt. No. 40 at 8-9. Based on the plaintiff's motion for preliminary injunction, it appears that he has consistently been requesting medical care for the same issue and that the issues have not been resolved over an extended period. The

plaintiff alleges: Dr. Murphy denied that the plaintiff's urine was bloody a day or two before he needed emergency surgery, Dr. Murphy did not treat the plaintiff's stomach pain which resulted in the plaintiff needing emergency surgery to have his gall bladder removed, Dr. Murphy has not addressed the plaintiff's leaky urine issue, and Dr. Murphy has not addressed the plainitff's right testicle pain. Based on these allegations, the plaintiff understandably does not want Dr. Murphy to treat him. He also claims that there are other doctors at Oshkosh who can treat him. The plaintiff's allegations constitute more than mere disagreement with a course of treatment.

In their response to the plaintiff's motion for preliminary injunction, the defendants state that they will provide a more detailed response if needed. The court will require them to provide that more detailed response before resolving the plaintiff's motion for preliminary injunction. The defendants should file that response within twenty-one days of the date of this order. The plaintiff will then have ten days to file a reply.

## II. Plaintiff's Motion to Correct Named Defendants, dkt. no. 67

The plaintiff has filed a letter "about defendants who were not added to caption." Dkt. No. 67. He states that Welcome Rose, Lori Alsum and Charles Factor are not in the caption of the docket sheet and he asks that the court correct this "as they were on my original filing." Id.

The court did not add these individuals to the caption because the plaintiff did not name them as defendants in the complaint. See Dkt. No. 1 at 1, 5-7. This probably was an oversight on the plaintiff's part because his letter

to the court demonstrates that he thought there were defendants. Page 10 of the 118-page complaint references Welcome Rose, Lori Alsum and Charles Facktor in conjunction with defendants Holly Gunderson and Lori Becher, who all allegedly are part of the administrative complaint department and who allegedly knew that the plaintiff's painful conditions were not being treated. Dkt. No. 1 at 10-11.

The court will construe the plaintiff's letter as a motion to amend the complaint caption to add Rose, Alsum and Facktor as defendants and it will grant the motion. The court will order service of the complaint on the new defendants, direct them to answer the complaint, and amend the scheduling order deadlines.

### III. Plaintiff's Motions to Compel, dkt. nos. 79, 104; and Defendants' Motion for Protective Order, dkt. no. 81

On August 9, 2018, the plaintiff filed a motion to compel discovery. Dkt. No. 79. He states that he believes, based on his "jailhouse lawyer handbook," that he can send up to twenty-five interrogatories to each defendant. Id. The plaintiff states that the State defendants' lawyer sent him a letter which the plaintiff interprets as a refusal to answer all his interrogatories. Id.; Dkt. No. 80-1. The letter states that counsel returns to the plaintiff the thirty-one interrogatories he sent and asks him to identify the twenty-five he wants the State defendants to answer. Id. The plaintiff asks the court to compel the defendants to answer his interrogatories. Dkt. No. 79 at 1.

The State defendants followed up with a joint motion for protective order and response to plaintiff's motion to compel. Dkt. No. 81. The defendants ask

the court to issue an order that they do not need to respond to the plaintiff's most recent requests for admissions and interrogatories, and to deny the plaintiff' s motion to compel. Id. at 1. According to the State defendants, they already have responded to the plaintiff's first set of discovery, which included responding to 233 requests for admissions. Id. at 2. They state that on August 3, 2018, they received another set of discovery, which included 124 interrogatories. Id. They attempted to meet and confer with the plaintiff and told him to select the twenty-five he wants them to respond to. Id. According to the defendants, the plaintiff failed to meet and confer; instead, he filed his motion to compel and then, on August 15, 2018, the defendants received 90 additional requests for admissions. Id. They state that a large portion of this discovery is duplicative of the discovery requests to which they already have responded and/or can be answered by the plaintiff reviewing his medical records and the relevant inmate complaints. Id. The State defendants ask the court to enter a protective order, stating that they do not need to respond to the plaintiff's outstanding discovery request, and that the plaintiff must seek permission from the court before he serves any additional discovery on them. Id. With respect to the plaintiff's motion to compel, the defendants contend that the court should deny the motion because the plaintiff failed to meet and confer, as required. Id. at 3. They also state that the plaintiff did not even attempt to contact them to seek permission to serve more than twenty-five interrogatories. Id.

The plaintiff since has filed another motion to compel—probably because the court delayed in responding to his first one. Dkt. No. 104.

The court gets involved in the discovery process only if a party fails to respond to interrogatories or requests for production of documents. In such a situation, the party who made the requests may file a motion to compel with the court, but only after conferring or attempting to confer with the party failing to make disclosure or discovery to obtain it without court involvement. Civil L.R. 37 (E.D. Wis.) The plaintiff must attempt to resolve discovery disputes in this manner before filing a motion to compel discovery. Any motion to compel should describe the efforts the moving party has made to resolve the dispute directly with the other side. See Fed. R. Civ. P 37(a); Civil L. R. 37 (E.D. Wis.). The plaintiff did not attempt to resolve his discovery dispute with the defendants before filing his motion to compel. The court will deny the plaintiff's motions to compel.

"Any party may serve upon any other party no more than 25 written interrogatories." Civil L.R. 33(a)(1) (E.D. Wis.). Under this rule, the plaintiff may direct twenty-five interrogatories to the State defendants and twenty-five to defendant Wall, who is represented by separate counsel. See id. The plaintiff may ask the State defendants' permission to serve more than twenty-five interrogatories, but he should make that request directly to the State Defendants' lawyer; he should not file a motion with the court. Civil L.R. 33(a)(3) (E.D. Wis.). Only if the defendants refuse to allow him more than twenty-five interrogatories, the plaintiff believes that he needs to ask more than

twenty-five interrogatories to either set of defendants, and he unsuccessfully attempts to resolve the issue with the defendants, may the plaintiff file a motion with the court to compel discovery—and if even then, he must explain to the court what efforts he made to work things out with the defendants on his own. Id.

The court also will deny the defendants' motion for protective order. The plaintiff does not have an attorney and he has limited options for conducting discovery. The defendants may object to discovery requests that they do not believe they have to respond to. But the court will not deem all the plaintiff's admissions requests unreasonable. It appears that the plaintiff followed up with requests for admissions after the defendants refused to answer the interrogatories. And it is not clear if the defendants have responded to any interrogatories at this point. In any event, the court has directed the plaintiff to consult with the defendants and the court anticipates that the parties will be able to work together to conduct any future discovery in a reasonable manner.

**IV. Plaintiff's Motion to Postpone Deposition and Appoint Counsel, dkt. no. 90**

A. Postpone Deposition

On September 11, 2018, the plaintiff filed a motion to postpone his deposition— scheduled for September 14, 2018—until the court appoints him an attorney. Dkt. No. 90. According to the plaintiff, he found out on September 7 that the defendants had scheduled a deposition of him at Oshkosh on September 14. Id. at 1. The plaintiff states that this violates the court's order which stated that he should have received notice of the deposition fourteen

13

days beforehand. Id. at 1-2. He states that the notice was dated August 31, 2018 but was not served on him until September 7. Id. at 2. The plaintiff also states that the notice he received violates the court's order that all discovery is to be completed thirty days *before* the discovery deadline, which was September 14, 2018. Id.[1]

The plaintiff's request to postpone his deposition is moot. The court is going to extend the deadlines, so the defendants may depose the plaintiff, if needed.

B.   Request for Counsel

The plaintiff also asked the court to appoint counsel to represent him. Id. at 2. He states that he cannot afford counsel, that his imprisonment will greatly limit his ability to litigate the issues in this case, that the case is complex and will require significant research and investigation, and that he has limited access to the law library and limited knowledge of the law. Id.

The defendants oppose the plaintiff's request for counsel. Dkt. No. 94. They contend that the plaintiff should use the approximately $10,000 which he claims he has invested in the Federal Court Registry Investment System at the United States Treasury. Id. at 1-2. The plaintiff responds that he should not be required to use this money. Dkt. No. 96 at 1. He points out that he disclosed

---

[1] On September 12, 2018, the State defendants filed a motion for extension of time to conduct discovery and file dispositive motions. Dkt. No. 91. The court granted this motion with a text-only order on October 12, 2018, extending the deadline for the completion of discovery to October 29, 2018 and extending the dispositive motion filing deadline to November 29, 2018. Dkt. No. 98.

14

this money in his motion for leave to proceed without prepayment of the filing fee and that Judge Adelman ordered that the money stay in the account until his release from prison. Id. The plaintiff states that he does not have the authority to access the funds until after his release. Id.

The court previously denied the plaintiff's motions to appoint counsel. Dkt. Nos. 40, 63. The court agrees that he has made a reasonable attempt to find an attorney on his own. But, as explained in the court's prior orders, the plaintiff has shown that he is competent to conduct discovery and engage in pretrial motion practice. The plaintiff's filings continue to demonstrate his ability to advocate for himself as well as his understanding of his claims and the issues involved. The plaintiff is not a lawyer, so he doesn't have the same knowledge of the law that the defendants do. But the court takes account of that fact, and provides appropriate minimal guidance as well as leniency as it relates to his understanding and knowledge of applicable procedural rules. The court again will deny without prejudice the plaintiff's motion to appoint counsel because he continues to be able to represent himself at this stage.

## V.     Plaintiff's October 15 Letter to the Court, dkt. no. 101

On October 15, 2018, the plaintiff filed a letter to the court asking for clarification on whether the court's scheduling order *required* him to file a dispositive motion, or whether it just *allowed* him to file one if he wanted to. Dkt. No. 101 at 1. The court never requires any party to file a dispositive motion (such as a summary judgment motion). It is each party's choice

whether to file such a motion or not. The court simply sets deadlines by which parties *may* file such motions if they choose to do so.

**VI.     Conclusion**

The court **ORDERS** the defendants to file a more detailed response to the plaintiff's motion for preliminary injunction (dkt. no 64) within twenty-one days of the date of this order, as described in this order. The plaintiff may file a reply within ten days after the defendants respond.

The court **GRANTS** the plaintiff's motion to correct named defendants. Dkt. No. 67. The court asks the clerk's office to add Welcome Rose, Lori Alsum and Charles Facktor as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** the clerk's office to electronically send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Welcome Rose, Lori Alsum and Charles Facktor.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court **ORDERS** defendants Rose, Alsum and Facktor to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **DENIES** the plaintiff's motion for temporary restraining order. Dkt. No. 73.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 79.

The court **DENIES** the defendants' motion for protective order. Dkt. No. 81.

The court **DENIES AS MOOT** the plaintiff's motion to postpone deposition. Dkt. No. 90.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 90.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 104.

The court **AMENDS** the scheduling order: the deadline for the parties to complete all discovery is **March 15, 2019**, and the deadline for filing dispositive motions is **April 15, 2019**.

Dated in Milwaukee, Wisconsin this 29th day of November, 2018.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **United States District Judge**