UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEITH JACKSON,

            Plaintiff,

v.                                             Case No. 17-cv-194-pp

DR. PATRICK MURPHY, GARY HAMBLIN,
EDWARD WALL, JUDY SMITH,
SARA SCHNEIDER, DANIELLE FOSTER,
MORGAN BAILEY, WILLIAM MCCREEDY,
WILLIAM GOLDEN, JAMIE BARKER,
DAVID BURNETT, LON BECHER,
HOLLY GUNDERSON, ASHLEY WALDVOGEL,
THERESA MURPHY, CARRIE SPRANGER,
WELCOME ROSE, LORI ALSUM,
and CHARLES FACKTOR,

            Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 64)**

---

Plaintiff Keith Jackson, a Wisconsin state prisoner incarcerated at Oshkosh Correctional Institution, is representing himself. He is proceeding on an Eighth Amendment deliberate indifference to a serious medical need claim, based on allegations that the defendants delayed and failed to treat his soft tissue disease symptoms over the course of about four-and-a-half years (from February 27, 2012 until August 2016), resulting in unnecessary pain and suffering. See Dkt. No. 40 at 3-5. The plaintiff filed a motion for preliminary injunction, dkt. no. 64, and on November 29, 2018, the court directed the defendants to file a more detailed response to that motion, dkt. no. 119 at 1.

1

The defendants have filed that response. Dkt. No. 129. The court will deny the plaintiff's motion for preliminary injunction.

The court's November 29, 2018 order described the plaintiff's motion for preliminary injunction:

> The plaintiff has filed a motion for preliminary injunction. Dkt. No. 64. He seeks an order "to stop Dr. Murphy from deciding, performing or having anything to do" with providing him medical care. Id. at 1. The plaintiff describes in detail the basis for his motion, which primarily was Dr. Murphy's alleged failure to diagnose and treat his symptoms, which he alleges resulted in emergency surgery at Mercy Hospital on June 10, 2018, to remove the plaintiff's gall bladder. Id. at 1-2.
>
> Specifically, the plaintiff alleges that on June 6, 2018, he was rushed to the Mercy Hospital emergency room after vomiting blood and suffering severe stomach pain. Id. at 1. He allegedly received a CT scan and was found to have an enlarged gallstone blocking his cystic and bile ducts. Id. The plaintiff states that he was given pain medication, told that he would be returned to Oshkosh and that prison staff would schedule surgery for him immediately. Id. The next day, the plaintiff had blood in his urine. Id. He took a bag of bloody urine to the "HSU" (Health Services Unit) and, once there, he provided another urine sample which the nurse took to Dr. Murphy, who allegedly stated that the plaintiff "was not peeing blood and that's not blood in [his] urine." Id. On June 8, the plaintiff visited Mercy Hospital and staff there told him that the surgery had been scheduled. Id. at 1-2. The plaintiff states that he then was returned to prison and that he was in pain, but had pain medication. Id. at 2. The next evening, the plaintiff allegedly starting vomiting, and some of the vomit was bloody. Id. Prison staff allegedly immediately transported the plaintiff to the emergency room at Mercy Hospital and on June 10, his gallbladder was removed. Id. He was hospitalized until June 15 and then returned to Oshkosh. Id. The plaintiff states that Dr. Murphy did not see him when he returned to Oshkosh, but that a nurse did see him. Id. The plaintiff also states that Dr. Murphy has shown incompetency for years in treating him, and he attaches several exhibits to his motion. Id.

2

Dkt. No. 119 at 2-3. In directing the defendants to file a more detailed response to the plaintiff's motion for preliminary injunction, the court stated the following:

> Based on the plaintiff's motion for preliminary injunction, it appears that he has consistently been requesting medical care for the same issue and that the issues have not been resolved over an extended period. The plaintiff alleges: Dr. Murphy denied that the plaintiff's urine was bloody a day or two before he needed emergency surgery, Dr. Murphy did not treat the plaintiff's stomach pain which resulted in the plaintiff needing emergency surgery to have his gall bladder removed, Dr. Murphy has not addressed the plaintiff's leaky urine issue, and Dr. Murphy has not addressed the plaintiff's right testicle pain. Based on these allegations, the plaintiff understandably does not want Dr. Murphy to treat him. He also claims that there are other doctors at Oshkosh who can treat him. The plaintiff's allegations constitute more than mere disagreement with a course of treatment.

Dkt. No. 119 at 8-9.

In their more detailed response, the defendants contend that the plaintiff's request for an order prohibiting Dr. Murphy from treating him "is wholly unsupported by either the facts or the law." Dkt. No. 129 at 1. According to the defendants, the plaintiff has not established facts necessary for the court to grant his motion, and the facts that they submitted establish that the court should deny the motion. Id. at 1-2. In his reply, the plaintiff reiterates that he has not been given good medical care and that two other doctors at Oshkosh could treat him. Dkt. No. 134. The plaintiff states that Dr. Murphy has "constantly misdiagnosed [his] medical problems and that too can be evidence of deliberate indifference." Id. at 3. The plaintiff goes on to describe his disagreement with Dr. Murphy's treatment of him. Id. at 3-7.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). The purpose of such an injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." Fahenm-El v. Klincar, 841 F.2d 712, 717 (7th Cir. 1988). To obtain a preliminary injunction, the plaintiff has the burden of establishing that (1) he is likely to succeed on the merits of his claim; (2) he has no adequate remedy at law; and (3) he is likely to suffer irreparable harm without the injunction. Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012), citing Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583, 589-90 (7th Cir. 2012).

In the context of prisoner litigation, the scope of the court's authority to issue an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); see also Westefer, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

The defendants filed the plaintiff's HSU records from January to July 2018. Dkt. No. 130-1. The defendants summarize these records in their most recent response to the motion for injunctive relief, and argue that the records show that the plaintiff has received extensive medical care.

> Specifically, Dr. Murphy had an appointment with Jackson on April 10, 2018, due to Jackson's complaints of urinary incontinence. (Murphy Decl. ¶ 6, Ex. 1003 at 21.) Dr. Murphy noted that Jackson remained functional and that the best course of treatment was for Jackson to wait to be seen by UW Urology for his incontinence. As for his chronic abdominal pain, which Dr. Murphy had been treating for several years, Dr. Murphy recommended a trial of Imipramine, a prescription medication, but Jackson refused to take it, which Dr. Murphy believed showed Jackson was tolerating the pain because he was not interested in trying new medications to try to resolve the pain. (Murphy Decl. ¶ 7-8, Ex. 1003 at 21.)
>
> Jackson was then seen by UW Urology on May 11, 2018. (Murphy Decl. ¶ 10, Ex. 1003 at 109-121.) UW Urology recommended that they continue to monitor his right epididymal cyst and schedule a follow-up appointment in 6 months, but no other treatment. (Murphy Decl. ¶ 10, Ex. 1003 at 19, 34, 109-121.) Dr. Murphy scheduled the follow up appointment on May 15, as recommended by UW Urology. (Murphy Decl. ¶ 11, Ex. 1003 at 19, 34, 109-121.)
>
> Then on June 6, Jackson reported that he was vomiting blood and had severe right upper quadrant pain. (Murphy Decl. ¶ 12, Ex. 1003 at 17-18.) He was sent to the Emergency Room and a CT scan showed that he had gallstones. (Murphy Decl. ¶¶ 12-13, Ex. 1003 at 16, 93-107.) Gallstones have nothing to do with the urinary incontinence that Jackson was experiencing. (Murphy Decl. ¶ 13, Ex. 1003 at 16, 93-107.) Moreover, while it is possible that Jackson had gallstones in April 2018 when he had an appointment with Dr. Murphy, but if he did, Dr. Murphy did not believe that they were causing symptoms at that time because Jackson's pain at that time was reported to be left sided pain, which would be unusual for gallstone pain. (Murphy Decl. ¶ 13, Ex. 1003 at 16, 93-107.) Also, his abdominal pain was present for many years and the most recent CT scan report made no mention of gallstones, so there was no reason for Dr. Murphy to believe that the pain in April 2018 was related to gallstones. (Murphy Decl. ¶ 13, Ex. 1003 at 16, 93-107.)

5

> At the Emergency Room, the doctor recommended that Jackson meet with a surgeon to determine whether the gallstones needed to be removed. (Murphy Decl. ¶¶ 14, Ex. 1003 at 16, 32, 92-93.) On that same day, June 6, Dr. Murphy put in a request to have Jackson sent off-site to meet with a surgeon, which was approved by Dr. Hoftiezer immediately. (Id.)
>
> Pursuant to the recommendation of the Emergency Room doctor, Jackson was seen by Dr. Robert McDonald at Mercy Medical Center on June 8, who determined that Jackson's gallstones should be removed within 14 days, or sooner if his pain increased. (Murphy Decl. ¶ 16, Ex. 1003 at 15, 31, 89.) On June 9, before the surgery could be scheduled, Jackson reported that he was throwing up blood so, pursuant to Dr. McDonald's recommendation, Jackson was again sent off-site to Mercy Medical Center, where he was admitted and his gallstones were removed. (Murphy Decl. ¶¶ 17-19, Ex. 1003 at 10, 13-14, 40-41, 79-80.) Jackson was discharged back to Oshkosh Correctional on June 16, and he was provided with follow up care consistent with Dr. McDonald's orders. (Id.)

Dkt. No. 129 at 4-6.

"Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007) (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976)). At the same time, the fact that a plaintiff received some medical care "does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." Id. (citing Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)).

Even if the plaintiff could meet the first two requirements for obtaining injunctive relief—proving that he has a reasonable likelihood of success on the

merits of his Eighth Amendment claim[1] and showing that he has no adequate remedy at law—he cannot meet the third requirement. The plaintiff has not shown that he is likely to suffer irreparable harm if the court does not enjoin Dr. Murphy from treating him. The plaintiff's disagreement with the way Murphy is treating him does not show that he is suffering irreparable harm, and the medical records the defendants file cast doubt on whether the plaintiff is suffering harm at Murphy's hands at all. Rather, the record shows that the plaintiff has received extensive, ongoing medical care both at the prison and offsite. The plaintiff does not want Dr. Murphy to treat him, but without proof that Murphy's treatment is causing the plaintiff irreparable harm, the court cannot grant injunctive relief.

The court **DENIES** the plaintiff's motion for preliminary injunction. Dkt. No. 64.

Dated in Milwaukee, Wisconsin this 11th day of February, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**

---

[1] The court expresses no opinion on whether the plaintiff has a reasonable likelihood of success on the merits of his claim. The deadline for completing discovery does not expire until March 15, 2019 and dispositive motions are not due until April 15, 2019. Dkt. No. 119. The court cannot assess the plaintiff's likelihood of success on the merits of his claims on the scant record before it.